IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHELLE LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 04-cv-0630-MJR |
| ) | |
| THE TERMINAL RAILROAD ) | |
| ASSOCIATION OF ST. LOUIS, and ) | |
| UNITED STATES STEEL CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM and ORDER

REAGAN, District Judge:

Now pending before this Court are two summary judgment motions (Docs. 36, 38), a motion to voluntarily dismiss this case with prejudice (Doc. 40), and a motion for leave to file a belated response to the summary judgment motions (Doc. 47).[1]

Both of the named Defendants oppose Plaintiffs' motion for voluntary dismissal (*see* Docs. 45, 46). The Court still could permit the voluntary dismissal under **FEDERAL RULE OF CIVIL PROCEDURE 41(a)(2)** "upon such terms and conditions as the court deems proper," but that path is problematic for several reasons.

First, the crucial deadlines have elapsed and the settlement conference, final pretrial conference, and trial loom near. Defendants – both of whom filed summary judgment motions – could be prejudiced by the dismissal and refiling of the suit at this late date. Moreover, Plaintiff already has submitted a response to the summary judgment motions (Doc. 51 and attachments to Doc. 48), so the Court can resolve those on the merits.

---

[1] A fifth motion (Doc. 49 - for leave to file a second amended complaint) is referred to the United States Magistrate Judge assigned to this case – the Honorable Donald G. Wilkerson.

Accordingly, the Court **DENIES** Plaintiff's motion for leave to voluntarily dismiss this case without prejudice (Doc. 40) and **GRANTS** Plaintiff's motion for leave to file a slightly belated memorandum opposing summary judgment (Doc. 47). Which brings the Court to the two summary judgment motions themselves. Analysis begins with the legal standard governing such motions.

Summary judgment is proper if the pleadings, depositions, interrogatory answers, admissions, and affidavits leave no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. **FED. R. CIV. P. 56(c).** The moving party bears the burden of establishing both the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metropolitan Life Ins. Co.*, **123 F.3d 456, 461 (7th Cir. 1997).**

In determining whether a genuine issue of material fact exists, the Court reviews the record in the light most favorable to the non-moving party (here, Plaintiff Lewis) and makes all reasonable inferences in her favor. *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986);** *Ulichny v. Merton Community School Dist.*, **249 F.3d 686, 699 (7th Cir. 2001);** *Miranda v. Wisconsin Power & Light Company*, **91 F.3d 1011, 1014 (7th Cir. 1996).**

Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial. *Oest v. IDOC*, **240 F.3d 605, 610 (7th Cir. 2001);** *Moore v. J.B. Hunt Transport, Inc.*, **221 F.3d 944, 950 (7th Cir. 2000).**

Lewis' November 2, 2004 amended complaint contains two counts against the Terminal Railroad Association of St. Louis ("TRRA")(Count 1 asserting negligence and Count 2

pleading res ipsa loquitur) plus one count against United States Steel Corporation ("USS")(Count 3, which pleads negligence).

More specifically, Lewis alleges that on September 29, 2003, she was walking along Edwardsville Road in Granite City, Illinois (lawfully crossing TRRA's property at the intersection of Edwardsville Road and a set of railroad tracks that run between 14th Street and 20th Street), when she slipped on an accumulation of iron ore pellets and was injured. Lewis maintains that TRRA – who owns railroad cars, tracks, and equipment in the Granite City, Illinois area – had a contractual relationship with Defendant USS, under which TRRA would pick up loaded hopper cars from USS' Granite City facility and transport those cars. Lewis further alleges that TRRA owned, operated, and maintained the stretch of railroad track on which she fell and was hurt.

In Count 1, Lewis claims that TRRA negligently failed to: (a) maintain its premises in a reasonably safe condition, (b) inspect its premises, (c) correct a dangerous condition on the premises, (d) warn Lewis of this dangerous condition, (e) properly load its hopper cars, (f) inspect its hopper cars, (g) maintain its hopper cars, and (h) repair the ground alongside Edwardsville Road crossing. In Count 2, Lewis asserts that "in the ordinary course of things" she would not have slipped, fallen, and sustained injury, if TRRA had not been negligent in inspecting and maintaining its premises.

In Count 3, Lewis claims that USS – who is in the business of producing and distributing steel – negligently failed to properly (a) load the hopper cars with iron ore pellets, (b) train its employees in the proper method of loading hopper cars to prevent iron ore pellets from accumulating, (c) inspect the hopper cars before they left USS' possession, (d) remove accumulated iron ore pellets from the tops and sides of the cars, and (e) warn Lewis of this condition.

In its August 1, 2005 summary judgment motion (Doc. 36), Defendant TRRA argues that it neither owned nor maintained the tracks in question and thus cannot be held liable under a theory of premises liability. TRRA further argues that it did not own or load the hopper cars in question and, therefore, cannot be held liable for negligently loading or repairing those cars. Finally, TRRA argues that summary judgment is merited on Count 2 (the res ipsa loquitur claim), because Lewis cannot establish that TRRA was in exclusive control of the instrumentality that caused the injury or that TRRA possessed or controlled the property on which the incident occurred.

In her deposition, Lewis testified that she fell between the two rails of track one – or possibly between track one and track two – at the Edwardsville Road crossing. TRRA has submitted deposition excerpts from Brag Ragland (TRRA's Superintendent and corporate representative) and Rick McQueen (Director of Engineering Services and Administration for TRRA), both of whom testified that the tracks in question are *not* owned by TRRA.

Plaintiff Lewis has presented no evidence demonstrating that TRRA owned these tracks. TRRA cannot be held liable, on a theory of premises liability, for property TRRA neither owns nor maintains. Thus, TRRA is entitled to summary judgment on allegations (a), (b), (c), (d), and (h) of Count 1 of Lewis' amended complaint.

Count 1 also contains allegations that TRRA negligently overloaded its hopper cars, negligently failed to inspect its hopper cars, and negligently failed to maintain/repair its hopper cars (*see* Count 1, allegations (e), (f), and (g)). But TRRA has presented evidence that it did not own the hopper cars and did not load the cars with iron ore pellets.[2] Plaintiff has presented no evidence to counter this testimony. The record before the Court reveals that TRRA did not load the hopper cars,

---

[2] In fact, the deposition testimony indicates that the hopper cars were received from (and loaded by) Burlington Northern Railroad.

so TRRA cannot be held liable under allegation (e) of Count 1. TRRA did not own the cars, had no duty to repair the cars, and cannot be held liable under allegation (g) of Count 1.

Which (as to Count 1) leaves only allegation (f) – that TRRA negligently failed to inspect the hopper cars. The record discloses the following as to this claim. TRRA takes loaded hopper cars from Burlington Northern near Hoyt Junction (approximately three miles from the Edwardsville Road crossing where Lewis fell). TRRA moves the cars to a point east of Edwardsville Road. USS empties the cars and brings them back to TRRA, who then moves the empty cars back across Edwardsville Road. TRRA does not do any inspection of the hopper cars when they receive them from Burlington Northern (Ragland Depo. pp. 29-30). TRRA does have control of the cars while iron ore pellets could be leaking from them (*Id.*, p. 34), TRRA is not supposed to transport a hopper car that is leaking materials (*Id.*, pp. 33-34), TRRA has been aware of pellets constituting a slipping hazard (*Id.*, pp. 41-42), and TRRA has a contract service that "comes in and vacuums" up loose pellets (*Id.*, p. 35).

Construing all facts and reasonable inferences in the light most favorable to Plaintiff Lewis, and even assuming that TRRA carelessly inspected loaded hopper cars at some point, this negligence claim as to TRRA still fails, because Lewis has presented no evidence whatsoever that causally links an allegedly negligent inspection by TRRA with the injury Lewis suffered on September 29, 2003. Indeed, Lewis has presented no evidence that the pellets on which she slipped leaked out of cars operated by TRRA.

To succeed on a negligence claim under Illinois law, a plaintiff must allege that the defendant owed her a duty, that the defendant breached that duty, and that the defendant's breach *proximately* caused the plaintiff's damages. ***Dardeen v. Kuheling*, 821 N.E.2d 227, 231 (Ill. 2004),**

5

*citing Boyd v. Travelers Ins. Co.*, **652 N.E.2d 267 (Ill. 1995).** Stated simply, Lewis has adduced no evidence that TRRA owed her a duty, that TRRA breached that duty, and that TRRA's breach proximately caused her damages. No genuine issue of material fact remains, and TRRA is entitled to judgment as a matter of law on Count 1 of Lewis' first amended complaint.

The Court reaches the same conclusion as to Count 2 of the first amended complaint – Lewis' res ipsa loquitur claim. The Supreme Court of Illinois has described this doctrine as "a species of circumstantial evidence permitting the trier of fact to draw an inference of negligence if plaintiff demonstrates that he or she was injured (1) in an occurrence that ordinarily does not happen in the absence of negligence, (2) by an agency or instrumentality within the defendant's exclusive control." *Collins v. Superior Air-Ground Ambulance Service, Inc.*, **789 N.E.2d 394, 397 (Ill. App. 2003),** *quoting Gatlin v. Ruder*, **560 N.E.2d 586 (Ill. 1990).**

When res ipsa loquitur is invoked, the plaintiff bears the burden of proving that (1) the occurrence is one that would not ordinarily occur in the absence of negligence, and (2) the defendant had exclusive control of the instrumentality that caused the event. *Cosgrove v. Commonwealth Edison Co.*, **734 N.E.2d 155, 159 (Ill. App. 2000).**

In the instant case, Plaintiff Lewis cannot sustain her burden as to the second prong – that TRRA had *exclusive control* of the instrumentality that caused her to slip and fall. TRRA did not own the tracks on which Lewis fell, did not own the hopper cars from which the iron ore pellets allegedly spilled, and did not load the pellets into the cars. No genuine issue of material fact remains, and TRRA is entitled to judgment as a matter of law on Count 2 (the res ipsa claim).

Analysis now turns to Count 3 – Lewis' negligence claim against USS.

Lewis alleges that USS (a) failed to properly load the hopper cars with iron ore

pellets, (b) failed to properly train its employees in loading methods, (c) failed to inspect the hopper cars before they left USS' possession, (d) failed to remove accumulated pellets from the hopper cars before they left USS' possession, and (e) failed to warn Lewis and others of this defective condition. In seeking summary judgment, USS argues that Lewis has adduced no evidence regarding the condition of the hopper cars before loading, the identity of the railroad that transports the cars, the ownership of the cars used to transport the iron ore pellets, and the events that occurred during transport of the cars from Minnesota (where USS mines iron ore and processes it into pellets) to the point when they are delivered to TRRA in Illinois.

As stated above, to prove negligence under Illinois law, a plaintiff must establish that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injuries. ***Gray v. National Restoration Systems, Inc.*, 820 N.E.2d 943, 956 (Ill. App. 2004).** Whether a duty exists is a question of law for resolution by the Court. ***Id.*, citing First Springfield Bank & Trust v. Galman, 720 N.E.2d 1068 (Ill. 1999).**

In the case at bar, USS correctly notes that Lewis has not presented evidence to establish who owned the hopper cars or how the cars were loaded, much less evidence demonstrating that *USS* improperly loaded the cars, improperly inspected the cars, or improperly trained employees in this procedure.

The Ragland deposition does indicate that USS takes possession of the loaded hopper cars from TRRA and empties them. But nothing in the record now before the Court (including USS' interrogatory answers, Exh. 9 to Doc. 48) shows that USS owned the tracks/crossing at the spot where Lewis fell, owned the hopper cars from which the iron ore pellets allegedly spilled, or otherwise created the dangerous condition alleged to have caused Lewis' fall.

7

Lewis' counsel insists that "discovery is not complete in this case" (Doc.51, p. 3) and suggests that additional discovery will reveal that USS owned track number 4 and that Lewis fell on track 4. But Lewis' own deposition testimony states that she fell on track 1 (or possibly the space between track 1 and track 2):

> Q. And did you walk over the first rail of the first track?
> A. Yes.
> Q. Did you pass over the second rail of the first track?
> A. I believe that's when I fell.
> Q. Okay. So you were trying to get over the second rail of the very first track closest here to the meat packing company when you slipped, your foot went out from under you, and you fell, is that correct?
> A. When my foot, yes.
> Q. And you think your foot slipped on whatever that substance was that was on the ground by the second rail?
> A. Yes.
> Q. Could you have tripped over the second rail?
> A. No.
> Q. Are you sure about that?
> A. Yes.
> Q. Why do you say that?
> A. Because I had already crossed the track, one track, and I knew the tracks were there. I was aware of where I was actually walking at....
> Q. When your left foot slipped out from under you, were you trying to step over the second rail of the first track?
> A. I believe I was right between.
> Q. Between the two rails?
> A. Yes.
> Q. So you hadn't quite gotten to the second rail of the first track, is that correct?
> A. Yes.

Lewis Depo., Exh. 2 to Doc. 37, pp. 73-77.

As to the statement that discovery is not yet complete, the Court notes that the discovery deadline (already extended once by Magistrate Judge Wilkerson) expired July 22, 2005.

This Court must review the summary judgment motions on the evidence before it. Construing all facts and reasonable inferences in the light most reasonable to Lewis, she has not shown that USS owed her a duty or that USS breached that duty. This dooms her negligence claim against USS (Count 3). The record contains no genuine issue of material fact, and USS is entitled to judgment as a matter of law.

For the above-stated reasons, the Court **GRANTS** Defendant TRRA's motion for summary judgment (Doc. 36), **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant TRRA and against Plaintiff Lewis as to Counts 1 and 2 of the first amended complaint, **GRANTS** USS' motion for summary judgment (Doc. 38), and **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant USS and against Plaintiff Lewis on Count 3 of the first amended complaint. No claims or Defendants remain, so judgment may be prepared and entered immediately.

**IT IS SO ORDERED.**

**DATED this 19th day of August, 2005.**

    **s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**